UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-CR-0224 (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER |
| (1) JULIUS FINEDAY and<br>(2) SHARON ROSEBEAR, | |
| Defendants. | |

Lindsey E. Middlecamp, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Robert D. Richman for defendant Julius Fineday.

Aaron J. Morrison and Lisa M. Lopez, FEDERAL DEFENDER'S OFFICE, for defendant Sharon Rosebear.

Defendants Julius Fineday and Sharon Rosebear are charged with felony child neglect in connection with the death of a minor child ("Minor A"). Minor A was Fineday's daughter and Rosebear's granddaughter. This matter is before the Court on defendants' objections to the December 19, 2023, Order and Report and Recommendation ("R&R") of Magistrate Judge Leo I. Brisbois. Both defendants object to Judge Brisbois's recommendation that the Court deny their joint motion to suppress photographs taken during a December 25, 2022, warrantless search of the home in

which Fineday, Rosebear, and Minor A were living, and in which Minor A died.[1] In addition, Rosebear objects to Judge Brisbois's denial of her motion for a bill of particulars. Rosebear also objects to Judge Brisbois's recommendation that the Court deny her motion to dismiss and her motion to suppress evidence obtained during a search of her phone pursuant to a search warrant.

      The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court agrees with and adopts Judge Brisbois's analysis and recommended denial of Rosebear's motions to dismiss and to suppress evidence obtained from her phone. The Court likewise agrees with Judge Brisbois's analysis of Rosebear's motion for a bill of particulars and affirms his denial of that motion. Finally, with respect to defendants' joint motion to suppress photographs taken on December 25, 2022: The Court finds that exigent circumstances justified the warrantless entry and search of the residence and denies the motion to suppress on that basis. As a result, the Court need not address Judge Brisbois's finding that Fineday provided valid consent to the search.

---

[1] Defendants' motion also sought suppression of any photographs taken in February 2023. *See* ECF No. 57. The government has stipulated that it will not seek to introduce any such photographs. Hr'g Tr. 17 [ECF No. 70].

The Court briefly summarizes the relevant facts, which are set forth in more detail in Judge Brisbois's thorough R&R. Julius[2] lived in a house in Ponemah, Minnesota, with his children, including Minor A. Hr'g Tr. 23, 42–43 [ECF No. 70]. At approximately 7:15 pm on December 25, 2022, a 911 caller reported that Minor A was unresponsive at the house. Hr'g Tr. 45. Nicole Lopez, a special agent with the Federal Bureau of Investigation, was notified that a child on the Red Lake Indian reservation had died and that her body had been taken to the hospital. Hr'g Tr. 19–21, 45. Lopez went to the hospital, examined the child's body, and spoke with doctors and nurses. Hr'g Tr. 45–46. Also present at the hospital was Stephen Dow, a Red Lake criminal investigator, and Phillip Fineday, Minor A's grandfather. Hr'g Tr. 21, 46–47. Based on their examination, the condition of the child's body, and their discussions with healthcare professionals, Lopez and Dow concluded that Minor A's death may have been a homicide. Hr'g Tr. 46. Lopez also learned from Phillip that Julius was afraid that he (that is, Julius) was going to go to jail. Hr'g Tr. 23.

Because he was concerned that Minor A was the victim of a homicide, Dow directed a Red Lake police officer to go to the house. Hr'g Tr. 56. While at the house, the officer instructed Julius not to touch anything. Hr'g Tr. 64. Later, however, the officer noticed that Julius had defied that instruction and done some cleaning of the

---

[2]Because this order discusses another member of the Fineday family, the Court will use the family members' first names.

living room (the room in which Minor A had died). Hr'g Tr. 64. The officer directed Julius to stop. Hr'g Tr. 64.

Lopez and Dow arrived at the house at about 11:15 pm. Hr'g Tr. 55. The police officer was stationed outside of the house; he informed Lopez and Dow that, although he had instructed Julius not to touch anything, the officer had later observed Julius cleaning the living room. Hr'g Tr. 64. About four minutes after arriving at the house, Lopez and Dow approached the house, and Dow knocked at the door. Hr'g Tr. 28. After Julius opened the door, Dow stated, "Hi. Hey Julius. It's freezing. Mind if we come in? Your dad let us in." Hr'g Tr. 30–31; Gov't Ex. 1 (audio file). Julius let them into the house. Hr'g Tr. 31. Dow's statement that "[y]our dad let us in"—insofar as it implied that Phillip had given Lopez and Dow permission to enter the house—was false; Phillip had done no such thing (or at least there is no evidence that it is true).

The officers spent about 25 minutes inside, talking with the occupants and viewing the living room, kitchen, and basement stairs. Julius was fully cooperative; he answered questions and, as he pointed out various areas and objects of interest, Dow took photographs. Hr'g Tr. 32–41, 44; Gov't Ex. 1. Defendants move to suppress these photographs, contending that, under *Bumper v. North Carolina,* 391 U.S. 543 (1968) and its progeny, Dow's assertion that "your dad let us in" was a false claim of lawful authority to search that rendered Julius's consent involuntary. Judge Brisbois

disagreed, finding that Julius's consent was valid and the entry and search of the home were lawful. The Court finds that it need not address the issue of consent.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is presumptively unreasonable absent some exception to the warrant requirement." *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (cleaned up). One such exception is for exigent circumstances:

> The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant. It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence.

*Birchfield v. North Dakota*, 579 U.S. 438, 456 (2016). "[W]hen there is a sufficient basis to suspect that incriminating evidence will be destroyed, exigent circumstances exist, and the presence of probable cause allows officers to enter and search the home without" a warrant. *United States v. Meyer*, 19 F.4th 1028, 1031–32 (8th Cir. 2021) (citation and quotation marks omitted). Accordingly, "[n]ot only must the government establish that an exigency existed, but also that there was probable cause to search the residence." *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010).

The Court concludes that there was probable cause to search the house. The question is not close, and defendants do not argue otherwise. *See United States v. James*,

52 F.4th 1035, 1038 (8th Cir. 2022) ("Probable cause is present when there is a fair probability that contraband or evidence of a crime will be found in a particular place." (citation and quotation marks omitted)); Hr'g Tr. 36, 46 (Lopez testified that Minor A's body was very malnourished, that the child had a lice infestation and very matted hair).

The Court also concludes that Lopez and Dow had a sufficient basis to believe that incriminating evidence was in imminent danger of destruction.  Lopez testified that, in a homicide investigation, it is very important to preserve the scene as it was at the time of death.  Hr'g Tr. 25.  Before going to the house, Lopez knew that Julius feared that he was going to jail.  Hr'g Tr. 23.  Against this background, Lopez and Dow learned, upon arriving at the house, that despite being instructed not to touch anything, Julius had started cleaning the room in which Minor A had died.  Hr'g Tr. 64.  Given that Julius had already defied the on-scene officer's instruction about preserving the scene, and given that Lopez knew that Julius feared that he faced possible criminal charges, Lopez and Dow had an objective basis to believe that Fineday would destroy potential evidence.  *Cf. United States v. Meyer*, 19 F.4th 1028, 1031–32 (8th Cir. 2021) (finding exigent circumstances where officers had probable cause to suspect defendant of child-pornography offenses and defendant gave shifting explanations for declining to immediately turn over his devices, including stating that he wanted "a chance to check his email and stuff" (cleaned up)).

Finally, because Lopez and Dow did not learn of Julius's possible destruction of evidence until they arrived at the house, they did not have time to procure a warrant.

Defendants point to the officers' behavior to argue that they did not subjectively regard the situation as exigent. As noted, however, Lopez and Dow did not learn about Julius's defiance of the officer's instructions and potential destruction of evidence until they arrived at the house, and they entered the house less than five minutes after their arrival. Setting that aside, the officers' subjective beliefs and motivations are not relevant; the test is whether the circumstances objectively justified the officers' actions. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 404–05 (2006) (rejecting argument that the officer did not subjectively believe that the situation was urgent because "[t]he officer's subjective motivation is irrelevant"); *United States v. Scott*, 876 F.3d 1140, 1144 (8th Cir. 2017) (per curiam) (noting that, while "some officers testified that they concluded there was no longer an emergency," the circumstances, "[v]iewed objectively," justified the officers' actions); *United States v. Valencia*, 499 F.3d 813, 816 (8th Cir. 2007) ("While the officers' actions might suggest that they did not subjectively possess an overwhelming suspicion that they would find any victims or immediate threats in the apartment, we evaluate the constitutionality of the search by looking only to whether they had an objectively reasonable basis for believing that exigent circumstances necessitated warrantless entry into the apartment. "(citation and quotation marks omitted)).

The circumstances here, viewed objectively, justified the officers' entry into the house and taking of photographs to preserve a record of the scene at the time of Minor A's death. Defendants' motion to suppress the photographs is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES defendants' objections [ECF Nos. 85–86] and ADOPTS the R&R [ECF No. 82] insofar as it is consistent with this order. IT IS HEREBY ORDERED THAT:

1. The denial of defendant Rosebear's motion for a bill of particulars [ECF No. 52] is AFFIRMED.

2. Defendant Rosebear's motion to dismiss [ECF No. 55] is DENIED.

3. Defendant Rosebear's motion to suppress [ECF No. 56] is DENIED.

4. Defendants' joint motion to suppress [ECF No. 57] is DENIED.

Dated: January 19, 2024         s/Patrick J. Schiltz
                                Patrick J. Schiltz, Chief Judge
                                United States District Court